| | |
|---|---|
| JOSE ANTONIO GOMEZ ZAVALA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| ASSISTANT FIELD OFFICE ) | |
| DIRECTOR, ICE, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus [Doc. 1], Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. 6], and Petitioner's Reply and Opposition to a Motion to Dismiss [Doc. 7].

**I.     BACKGROUND**

Petitioner Jose Antonio Gomez Zavala ("Petitioner") is a citizen of Honduras who arrived in the United States in 1995 and was issued an Order of Removal in 1999. [Doc. 1 at 2]. However, he was granted Temporary Protected Status ("TPS"), which stays execution of any final order of removal, as a citizen and national of Honduras. [Id. at 2-3]. He was last granted TPS on January 6, 2024. [Id. at 2]. On January 19, 2026, he was detained in Charlotte, North Carolina, and was not provided an individualized custody determination or any lawful justification for his detention. [Id. at 3-4]. The same day, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and the All Writs Act, 28 U.S.C. §§ 2201 et seq. [Doc. 1]. He seeks immediate release from custody, a declaration that his detention was unlawful, and an award of reasonable costs and attorney's fees. [Id. at 4]. Petitioner has named as Respondents: unnamed Assistant

Field Office Director, ICE, whom Petitioner alleges has immediate physical custody of the Petitioner; Kristi Noem, Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, the United States Attorney General and overseer of the Executive Office for Immigration Review (EOIR). [Id. at 3].

Because it appeared that Petitioner was entitled to immediate release, the Court ordered Respondents to show cause why the writ should not be granted and certify the true cause of Petitioner's detention by January 29, 2026. [Doc. 3 at 2].

In response to the Court's Order, Respondents filed a motion to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(1). [Doc. 6]. Respondents argue that the petition is moot because Petitioner was released from custody on January 23, 2026, due to his TPS. [Id. at 2]. Respondents argue that Petitioner was released subject to supervisory conditions required by 8 U.S.C. § 1231(a)(3), which applies to aliens ordered removed that are not removed within the 90-day removal period. [Id. at 5]. Respondents further contend that such conditions do not amount to detention for which habeas relief may be granted. [Id. at 5-6].

Petitioner responded in opposition to Respondents' motion. [Doc. 7]. Petitioner argues that § 1231(a)(3) does not apply because he has TPS and 8 U.S.C. § 1254a(a)(1)(A) prohibits his removal based on his immigration status. [Id. at 3]. Petitioner argues that even though Respondents released Petitioner from physical detention they continue to maintain custody and restrain Petitioner's liberty through the imposition of various supervisory conditions. [Id. at 1-2]. That is, Petitioner is now subject to the Intensive Supervision Appearance Program (ISAP), which requires him to continuously wear an ankle monitor, to abide weekly check-ins at the Charlotte ISAP office, and be home for "random" home visits, which require him to remain home from 8:00 a.m. to 5:00 p.m. on designated days. [Id. at 2; Doc. 7-1 at 4, 6-13]. Petitioner also contends that

he has been authorized to lawfully work in the United States pursuant to 8 U.S.C. § 1254a(a)(1)(B) and that these conditions greatly restrict his ability to maintain employment.[1] [Doc. 7 at 2]. Neither party opposed the determination of this matter without a hearing. [See Doc. 3 at 2; Docs. 6, 7].

## II.  ANALYSIS

The "essence of habeas corpus" is "an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Under § 2241, federal district courts are granted broad authority, "within their respective jurisdictions," to hear applications for writs of habeas corpus filed by persons claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c). In other words, the function of a habeas petition is to challenge "the very fact or duration of [the petitioner's] physical imprisonment, and the relief that [the petitioner] seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment…." Preiser, 411 U.S. at 500.

The Court's review power under § 2241 extends to constitutional challenges directed at the lawfulness of post-removal-period detention and supervision. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001); see also Jones v. Cunningham, 371 U.S. 236 (1963) (parolee still "in custody" of the parole board because the parole order imposed conditions that "significantly confine[d] and restrain[ed] his freedom"; habeas relief may be sought); Spencer v. Kemna, 523 U.S. 1, 7 (1998) (incarcerated parolee's challenge to the validity of his conviction can be maintained if a 'collateral consequence' of the conviction still exists).

The TPS program "provides humanitarian relief to foreign nationals in the United States

---

[1] The Court notes that, according to the picture of the Employment Authorization card filed in this matter, Petitioner's authorization expired on July 5, 2025. [Doc. 1-1 at 6; Doc. 7-1 at 15].

who come from specified countries." Sanchez v. Mayorkas, 593 U.S. 409, 412 (2021). The Attorney General "may grant" any citizen of a designated foreign state who meets certain requirements "temporary protected status in the United States." 8 U.S.C. § 1254a(a)(1)(A). That status, once granted, provides a noncitizen with certain benefits "for as long as the TPS designation lasts." Sanchez, 593 U.S. at 412. One such benefit is a statutory prohibition on the noncitizen's removal or detention based on immigration status in the United States. 8 U.S.C. § 1254a(a)(1), (d)(4).

"Because the Government is the custodian and controls the relevant information, it bears the burden to produce evidence and articulate lawful authority justifying continued detention once a credible due process challenge is raised." Larrazabal-Gonzalez v. Mason, --- F.Supp.3d ---, 2026 WL 221706, at *3 (S.D. W.Va. Jan. 28, 2026).

Respondents here have not shown any basis for Petitioner's recent detention, even in the face of the Court's Order requiring them to certify its true cause, but rather tacitly admit that the detention was unlawful. In this regard, Respondents have also failed to show any events supporting or inciting the imposition of the intensive supervisory conditions, other than the fact of Petitioner's recent, though unlawful, detention. Respondents simply contend that Petitioner is subject to § 1231(a)(3) and that habeas relief is unavailable because Petitioner is no longer physically detained.

Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," which is called the "removal period." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." Id. § 1231(a)(2)(A). Under subsection (a)(3), however, if the alien does not leave or is not removed within the removal period, the alien, "pending removal, shall be

subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). These regulations include conditions requiring the alien to appear before an immigration officer periodically for identification; to submit as necessary to a medical and psychiatric examination; to give information under oath about the alien's nationality, circumstances, habits, associations, and activities; and to obey reasonable written restrictions on the alien's conduct and activities as prescribed by the Attorney General. Id.

Noncitizens with TPS status, however, are necessarily not subject to § 1231(a)(3) because they are not subject to final orders of removal during the period in which that status is in effect. See 8 U.S.C. § 1254a(a)(1)(A). A noncitizen can become ineligible for TPS under certain circumstances, such as if they have "been convicted of any felony or 2 or more misdemeanors committed in the United States." Id. § 1254a(c)(2)(B). The Secretary "shall withdraw [TPS] granted to an alien ... if [the Secretary] finds that the alien was not in fact eligible for such status." Id. § 1254a(c)(3)(A). Respondents concede, however, that Petitioner was released on January 23, 2026, because of his TPS. [Doc. 6 at 2; Doc. 6-1].

Petitioner has enjoyed TPS since 1999 and nothing before the Court suggests that he has been arrested, detained, or subject to supervisory conditions since that time, until now. Respondents provide no grounds or events supporting the imposition of such conditions except § 1231(a)(3), which does not apply to Petitioner.

Moreover, Zavala v. Prendes, No. 3-10-CV-1601-K-BD, 2010 WL 4454055, at *2 (N.D. Tex. Oct. 5, 2010), upon which Respondents rely, is distinguishable from this case in several ways. As Respondents point out, the petitioner in Zavala was detained by immigration authorities following his arrest for public intoxication. [Doc. 6 at 7]. Here, Petitioner has no criminal record. Furthermore, although the Zavala court found that "all the conditions imposed by immigration

authorities [we]re reasonable and f[ell] within the scope of 8 C.F.R. § 241.5," those conditions were arguably less restrictive than the conditions imposed on Petitioner. [Doc. 6 at 7]. Compare Zavala, 2010 WL 4454055, at *2 (conditions required the petitioner "(1) to report in person to the immigration office every Monday, and be at home afterward every Monday at 4:00 p.m. to meet with his case specialist; (2) to wear a leg monitor at all times; (3) to have quarterly meetings with his probation officer; and (4) to be at home by 8:00 p.m. every evening"), with [Doc. 7 at 2] (conditions require Petitioner to "wear an ankle bracelet continuously, check in on a weekly basis at the Charlotte ISAP office, and prepare for 'random' home visits which would require him to remain at home from 8:00A.M. to 5:00P.M.," all of which "greatly restrict the ability of the Petitioner to maintain [his authorized] employment"). Finally, and critically, unlike Petitioner here, the petitioner in Zavala v. Prendes was subject to a final removal order and not under TPS, despite his eligibility for it. Compare Zavala, 2010 WL 4454055, at *1, with [Doc. 7 at 2].

Because Respondents have shown no lawful basis for Petitioner's recent arrest and detention or the imposition of the supervisory conditions, the Court will deny Respondents' motion to dismiss.

### III. CONCLUSION

For the reasons stated herein, the Court will deny Respondents' motion to dismiss. Additionally, since filing his Petition, Petitioner has been released from detention and Respondents have conceded that he was entitled to be released. Therefore, the Court will require Petitioner to file an Amended Petition for Writ of Habeas Corpus detailing the grounds for this Court's jurisdiction, Petitioner's current circumstances, and the specific relief Petitioner seeks.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. 6] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner must file an Amended Petition for Writ of Habeas Corpus by March 6, 2026. Respondents shall **RESPOND** to Petitioner's Amended Petition by March 11, 2026. Petitioner may file a reply by March 13, 2026.

**IT IS SO ORDERED.**

Signed: March 2, 2026

Frank D. Whitney
Senior United States District Judge